# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA-EASTERN DIVISION

| | |
|---|---|
| PAMELA YOUNG, | ) ED CV 10-1565-SH |
| Plaintiff, | ) MEMORANDUM DECISION |
| v. | ) AND ORDER |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | ) |
| Defendant. | ) |

This matter is before the court for review of the decision by the Commissioner of Social Security denying plaintiff's application for Supplemental Security Income. Pursuant to 28 U.S.C. § 636(c), the parties have consented that the case may be handled by the undersigned. The action arises under 42 U.S.C. § 405(g), which authorizes the Court to enter judgment upon the pleadings and transcript of the record before the Commissioner. Plaintiff and defendant have filed their pleadings (Memorandum in Support of Plaintiff's Complaint ["Plaintiff's Brief"]; Defendant's Brief with Points and

1

Authorities ["Defendant's Brief"], and Plaintiff's Reply to Defendant's Brief and the defendant has filed the certified transcript of record. After reviewing the matter, the Court concludes that the decision of the Commissioner should be affirmed.

I. **BACKGROUND**

Plaintiff, Pamela Young, initially submitted an application for Supplemental Security Income on March 16, 2006, alleging an inability to work since December 10, 2004, due to a disability. The claim was initially denied on September 27, 2006, and upon reconsideration on April 24, 2007. [A.R. 34.] Plaintiff filed a timely written request for a hearing before the Administrative Law Judge ("ALJ"). [A.R. 34.] Plaintiff appeared and testified at a hearing held on March 4, 2008 in San Bernardino, CA.

The ALJ issued an unfavorable opinion on May 9, 2008 [A.R. 31.] The ALJ found the following severe impairments: depressive disorder, not otherwise specified, anxiety disorder, not otherwise specified; a psychophysiological reaction to a physical condition under 12.07; and a history of bradycardia syndrome, disorder status post pacemaker. [A.R. 36.] However, the ALJ did not find plaintiff disabled within the meaning of the Social Security Act.

Following the denial, plaintiff filed a subsequent application for Supplemental Security Income on May 20, 2008, alleging an inability to work since May 10, 2008, due to enlarged heart, status-post pacemaker implantation, shortness of breath, and back pain.

The claim was denied initially on October 24, 2008, and upon reconsideration on February 29, 2009. [A.R. 47-51, 53-57.] Plaintiff filed a timely written request for a hearing before the ALJ [A.R. 52.] Plaintiff appeared and testified at a hearing held on April 16, 2010 in San Bernardino, CA.

The ALJ determined that plaintiff has the following severe impairment: hypertension with history of bradycardia, status post pacemaker implantation. However,

the ALJ found that plaintiff was not disabled within the meaning of the Social Security Act. [A.R. 11.]

Following the Appeals Council's denial of plaintiff's request for a review to the hearing decision [A.R. 1-3], plaintiff filed an action in this Court.

Plaintiff makes five challenges to the 2010 Decision denying disability benefits for the period after May 10, 2008. Plaintiff alleges the ALJ erred in (1) failing to consider the State agency doctor's opinion, (2) finding that plaintiff did not have a severe mental impairment, (3) failing to provide a complete and accurate assessment of plaintiff's residual function capacity, (4) failing to provide clear and convincing evidence of his credibility finding, and (5) failing to obtain vocational expert testimony.

For the reasons discussed below, the Court finds that the decision of the ALJ should be affirmed.

### III. **DISCUSSION**

*A. Standard of Review*

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether it is free from legal error and supported by substantial evidence in the record as a whole. See Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence must be more than a mere scintilla, but not need be more than a preponderance. See Connet v. Barnhard, 340 F.3d 871 (9th Cir. 2003). This Court cannot disturb the Commissioner's findings if those findings are supported by substantial evidence, even though other evidence may exist to support plaintiff's claim. See Torske v. Richardson, 484 F.2d 59, 60 (9th Cir. 1979), cert. denied, Torske v. Weinberger, 417 U.S. 933 (1974).

*B*. *Plaintiff's Claims*

3

a. The ALJ properly considered the opinion of the State agency physician

Plaintiff asserts that the ALJ erred by failing to consider the State agency physician's opinion. In response, defendant contends that the ALJ properly considered the opinion of the state agency physician.

Contrary to plaintiff's argument, the ALJ did consider the State agency physician's opinion and properly rejected it in favor of the examining physician. "The opinion of an examining physician is…entitled to greater weight than the opinion of a nonexamining physician." See Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996). The ALJ must explain in the decision the weight given to opinion evidence of State agency physicians. See 20 C.F.R. § 416.927(f)(2)(ii). However, the ALJ does not have to discuss every piece of evidence provided that he discusses all relevant evidence. See Russell v. Bowen, 856 F.2d 81, 83 (9th Cir. 1988). Rather, the ALJ must set forth why "significant probative evidence has been rejected." Id. (citation omitted). Thus, where the evidence was neither significant, nor probative, an ALJ's failure to discuss the evidence does not constitute a failure to consider the evidence.

Defendant correctly points out that the ALJ did not specifically mention the State agency physician, Dr. Balson, by name. The ALJ's failure to identify Dr. Balson by name is not dispositive here since the ALJ is not required to discuss all the evidence before him. Russell, 856 F.2d at 83. Additionally, even though the ALJ did not refer to Dr. Balson by name, he nonetheless made reference to Dr. Balson and his findings. See Isham v. Barnhart, 2006 WL 42030 *1 (9th Cir. 2006) (finding that the ALJ did not fail to consider the opinion of a treating physician, although the ALJ did not identify the physician by name, because the ALJ still "addressed the core of [the physician's] opinions).

For example, the ALJ noted that "while the State agency psychiatric consultants marked the psychiatric technique review form at Exhibit B-7F to reflect the need to assess a residual functional capacity as found in the prior decision, the balance of the

form was completed to indicate a nonsevere mental impairment, thus indicating disagreement with the prior decision." [A.R. 12.] Moreover, the ALJ further stated that "the evidence better supports the assessments of the consultative medical examiner and the State agency medical consultants…" [A.R. 14.] Therefore, the ALJ properly considered Dr. Balson's opinion.

An ALJ may reject the opinion of a non-examining physician in favor of an examining physician. See Lester v. Chater, 81 F.3d 821 (9th Cir. 1995). Non-examining physician opinions "with nothing more" cannot constitute substantial evidence. Andrews v. Shalala, 53 F.3d 1035, 1042 (9th Cir. 1995). However, the consultative examiner's opinions, if supported by clinical tests and observations upon examination, are substantial medical evidence and may be relied upon by the ALJ. See Morgan v. Apfel, 169 F.3d 595 (9th Cir. 1999).

Here, although the ALJ considered Dr. Balson's opinion, the ALJ properly discounted portions Dr. Balson's findings in favor of Dr. Bagner's. In a report dated October 24, 2008, the State agency physician, Dr. Balson's, review of plaintiff's medical record indicated plaintiff is "moderately limited" in "the ability to understand and remember detailed instructions" and "the ability to carry out detailed instructions." As a result, Dr. Balson limited plaintiff to "simple repetitive tasks." [A.R. 470.] Instead of relying on this finding, the ALJ instead cited the examining physician Dr. Bagner's finding that plaintiff has only "a marginally mild degree of limitation." Specifically, in a report dated October 10, 2008, Dr. Bagner, indicated that plaintiff would have "zero limitations in maintaining concentration and completing simple tasks" and "mild limitations completing complex tasks. [A.R. 301.] Accordingly, the ALJ rejected portions Dr. Balson's opinion and gave primary weight to Dr. Bagner's findings.

It was within the ALJ's discretion to give primary weight to Dr. Bagner's opinion over the opinion of Dr. Balson because there was "nothing more" concerning Dr. Balson's opinion to render it substantial evidence. Thus, since Dr. Bagner's opinion was supported by his examination of plaintiff, the ALJ was proper in giving it more weight over Dr. Balson's opinion.

  b. The ALJ did not err in finding that plaintiff did not have a severe mental impairment

  Plaintiff contends that the ALJ erred in finding that plaintiff did not have a severe mental impairment. In response, defendant argues that plaintiff failed to prove that she had a severe mental impairment.

  A severe impairment or combination of impairments is one which significantly limits the physical or mental ability to perform basic work activities. 20 C.F.R. § 416.920 (2004). An impairment is severe when it more than minimally effects an individual's ability to do basic work activities. See Powell v. Chater, 959 F. Supp. 1238, 1242 (C.D. Cal. 1997). By its own terms, this is a *de minimus* test – intended to weed out the most minor of impairments. See Bowen v. Yuckert, 482 U.S. 137, 107 S. Ct. 2287, 2299-2300 (1987) (O'Connor, J. concurring).

  Here, the ALJ properly concluded that plaintiff does not have a mental impairment that causes any significant limitation in her ability to perform basic mental work related activities. In support, the ALJ first cites the "dearth of findings in the treating source records" with respect to plaintiff's mental health treatment. [A.R. 12.] An ALJ may reject the conclusory opinion of an examining or treating physician if the opinion is unsupported by clinical findings. See Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002) (finding that the ALJ properly discounted the treating physician's opinion because it was not adequately supported by clinical records or treatment records). Here, the ALJ found that treating physician's notes indicated that plaintiff was diagnosed and prescribed Cymbalta "with no indication of signs or symptoms beyond complaints of anxiety or depression." [A.R. 12.] The treatment records reveal no indication that the treating physician performed any tests or examination in diagnosing plaintiff with Bipolar disorder and anxiety disorder. [A.R. 375, 377-378.] As such, the ALJ properly relied on the lack of treating source records to find that plaintiff's mental impairments are not severe.

  In addition, the ALJ found that plaintiff "has no limitations in terms of paragraph B criteria in any way." [A.R. 12.] Specifically, the ALJ cited the fact that the "claimant's

medically determinable mental impairments cause no more than mild limitations on any of the first three functional areas and no episodes of decompensation." [Id.] [A.R. 465.] The ALJ determined plaintiff is unlimited in the areas of daily living, social function, and maintenance of concentration, persistence, or pace. In a Function Report dated July 20, 2008, plaintiff indicated that she performs household chores and cooks up to four times per week, goes out about four to five times per week, takes care of her daughter and is able to manage her money. In addition, she stated that she spends time with others, visits the park with her daughter, has her own bible study and has no problems getting along with family, friends, neighbors or others. [A.R. 103-110.]

Moreover, the ALJ considered the "findings of the consultative psychiatric examiner," Dr. Bagner. [A.R. 12.] Dr. Bagner concluded that plaintiff was alert and oriented to person and place, her thought processes are tight, there is no flight of thought, looseness of association, thought blocking or distractibility. [A.R. 299-300.] The ALJ further noted that Dr. Bagner assessed plaintiff with a Global Assessment Functional score of 70, "indicating a marginally mild degree of limitation." [A.R. 12, 300]. Lastly, the Psychiatric Review Technique form, dated October 24, 2008, was completed to indicate a nonsevere mental impairment. [A.R. 457-467.] No depression syndrome indications were found [A.R. 459.]

In addition, the ALJ properly cited plaintiff's "failure to follow the treating source recommendation to seek mental health treatment." [A.R. 12.] In Bunnell v. Sullivan, 947 F.2d 341, 346 (9th Cir. 1991) (en banc), the court found the failure to follow a recommended course of treatment relevant to severity of the impairment. The ALJ here stated that while plaintiff was found to have a "severe mental impairment in the prior decision based on medical expert testimony, Claimant has had no formal mental health treatment for Bipolar Disorder or Anxiety although advised to do so by her primary care physician in 2008." [A.R. 12.] In addition, plaintiff testified that although she is prescribed Lipitor for depression and Cymbalta for "suicidal thoughts," she does not take them. [A.R. 24-25]. As such, plaintiff's failure to follow the prescribed course of treatment for her mental impairments is indicative of the nonseverity of the conditions.

Thus, there was substantial evidence for the ALJ to conclude that plaintiff does not have a severe mental impairment.

    c.    The ALJ did not fail to provide a complete and accurate assessment of Plaintiff's residual functional capacity

Plaintiff asserts that the ALJ failed to provide a complete and accurate assessment of her residual functional capacity ("RFC"). The Defendant maintains that the ALJ properly determined plaintiff's RFC.

The ALJ did not fail to provide a complete and accurate assessment of Plaintiff's RFC when he found plaintiff capable of performing "medium" work. A RFC is what a claimant can still do despite existing exertional and nonexertional limitations. See 20 C.F.R. § 404.1545(a)(1). While the determination of a claimant's RFC is an "administrative finding," the ALJ must consider all the relevant evidence, including the diagnoses, treatment, observations by the treating physicians and family members, medical records, and the claimant's own subjective symptoms. See Social Security Ruling 96-5p; 20 C.F.R. §404.1527(e)(2) (stating that a RFC is not a medical opinion but an administrative finding that is reserved to the commissioner).

Here, the ALJ relied upon three findings when he formulated plaintiff's RFC. First, the ALJ considered the assessment of the State agency physician, Dr. Balson. In Dr. Balson's mental RFC assessment report dated October 24, 2008, he determined that plaintiff was not significantly limited in the areas of sustained concentration and persistence, social interaction or adaptation. [A.R. 469.] Moreover, while Dr. Balson found plaintiff to be moderately limited in the ability to understand and remember detailed instructions, and the ability to carry out detailed out detailed instructions, the ALJ properly rejected this portion of Dr. Balson's opinion in favor of Dr. Bagner's finding that plaintiff has only "mild" limitations (see discussion above).

Dr. Bagner's other findings provided additional support for the ALJ's RFC determination. As mentioned above, in a report dated October 6, 2008, Dr. Bagner stated

that plaintiff's (1) speech is intact and coherent although moderately decreased in rate, rhythm and volume, (2) thought process was tight and there is no flight or looseness of association, (3) reality contact is normal. Moreover, Dr. Bagner found that if plaintiff took anti-depressants she would improve in less than six months. [A.R. 301] Specifically, he noted that plaintiff would have (1) no limitations interacting with supervisors, peers, or the public, (2) zero to mild limitations maintain concentration and attention and completing simple tasks, (3) mild limitations in completing complex tasks, and (4) mild to moderate limitations handling normal stresses at work and completing a normal work week without interruption. [Id.]

Finally, the ALJ considered the findings at Exhibit B-4F, the Physical Residual Functional Capacity Assessment. [A.R. 292-297.] The assessment indicated that plaintiff is capable of lifting 50 pounds occasionally and 25 pounds frequently. [Id.] Moreover, plaintiff is capable of standing or walking for a total of about six hours per day in an eight hour workday. In addition, plaintiff is unlimited in her ability to push and/or pull. [Id.] Plaintiff was also found not to have any manipulative or communicative limitations. [Id.] Finally, the report found that plaintiff can climb, stoop, kneel, crouch and crawl frequently, and balance occasionally. [Id.] These capabilities are consistent with the ALJ's assessment of plaintiff's RFC.

As such, the ALJ provided a complete and accurate assessment of Plaintiff's residual functional capacity. Accordingly, there was substantial evidence in the record from which the ALJ could properly find plaintiff limited only to "medium" work.

        d.      The ALJ's credibility finding is supported by clear and convincing evidence

Plaintiff asserts that the ALJ failed to provide clear and convincing reasons for finding the intensity, persistence, and limiting effects of plaintiff's symptoms not credible. In response, defendant contends that the ALJ properly rejected plaintiff's subjective complaints and that the ALJ's decision to reject plaintiff's complaints was supported by the record.

The ALJ's assessment of plaintiff's credibility should be given great weight. See Nyman v. Heckler, 779 F.2d 528, 531 (9th Cir. 1985). Absent affirmative evidence showing that the claimant is malingering, an ALJ must set forth clear and convincing reasons for finding that a claimant lacks credibility. See Valentine v. Comm'r, 574 F.3d 685, 693 (9th Cir. 2009). If an ALJ finds that a claimant's testimony relating to the intensity of his or her pain is unreliable, he must set forth the reasons why he found the testimony unpersuasive. See Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999).

In evaluating a claimant's credibility, the ALJ may consider (1) the claimant's reputation for truthfulness, (2) inconsistencies within the claimant's testimony or as between his testimony and conduct, (3) the claimant's daily activities, work history, and (4) testimony from physicians or third parties concerning the nature, severity, and effect on the symptoms of which the claimant complains. See Light v. Social Sec. Admin., 119 F.3d 780, 792 (9th Cir. 1997)

Here, the ALJ cited specific, clear, and convincing reasons to support the determination that plaintiff's "statements concerning the intensity, persistence, and limiting effects of [her] symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." [A.R. 13.] For example, plaintiff testified that her pain limits her to standing for only one to two hours, sitting for about an hour and walking for only two blocks. [A.R. 26.]

However, the Physical Residual Functional Capacity Assessment prepared by medical consultant, Dr. Halpern, indicated that plaintiff is capable of standing and/or walking and sitting for a total of "about six hours in an eight-hour workday." [A.R. 293.] In addition, while plaintiff stated that she cannot "lift nothing heavy at all because of [her] arthritis," [A.R. 26] the Physical Residual Functional Capacity Assessment indicated that plaintiff is capable of lifting 50 pounds occasionally and 25 pounds frequently. [A.R. 293.] Finally, although plaintiff complained that pain in her chest, back and arm cause her problems with concentration [A.R. 21], the Mental Residual Functional Capacity Assessment dated October 24, 2008 states that plaintiff is not

significantly limited in "the ability to maintain attention and concentration for extended periods." [A.R. 468.] Because the RFC assessment is at odds with plaintiff's testimony regarding the persistence, intensity and limiting effects of her symptoms, the ALJ permissibly found her not credible.

Moreover, the ALJ cited "the detailed physical examination findings [that] were well within normal limits" [A.R. 14] to contradict plaintiff's complaints of chest pains and shortness of breath. Specifically, an independent internal medicine evaluation, dated August 16, 2008, indicated that plaintiff's chest, lung and cardiovascular examinations were normal [A.R. 289].

Furthermore, the ALJ properly discounted plaintiff's testimony on the ground that "claimant has had only routine conservative treatment." [A.R. 14.] A claimant's "statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints." Social Security Ruling 96-7p. Here, the ALJ noted that despite her alleged impairments and their disabling effect, "the medical evidence obtained since the prior decision documents only routine medical treatment for hypertension and hyperlipidemia." [A.R. 14.] Moreover, although plaintiff's representative stated "he would try to get updated medical records…to corroborate the claimant's allegation of yet further emergency room treatment, no updated treating source records have been submitted." [Id.] As such, plaintiff's "routine conservative treatment," contradicts her statements regarding the persistence, intensity and limiting effects of her symptoms. [A.R. 14.]

In addition, an ALJ may find that a claimant's refusal of a recommended course of treatment, or her failure to take a prescribed medication that would alleviate the alleged disabling symptoms, supports a finding that the claimant is not credible. See 20 CFR § 404.1530(a) and 416.930(a) ("In order to get benefits, you must follow treatment prescribed by your physician if this treatment can restore your ability to work."); 20 CFR 404.1530(b) and 416.930(b) ("If you do not follow the prescribed treatment without a good reason, we will not find you disabled."). Here, the ALJ noted that plaintiff did not follow the recommended course of treatment nor did she take the prescribed medications

for her depression. Significantly, however, Dr. Bagner found that if plaintiff did take anti-depressant medications, she should be significantly better in less than six months. [A.R. 301.] In fact, Dr. Bagner concluded that plaintiff had (1) no limitations interacting with supervisors, peers, or the public, (2) zero to mild limitations maintain concentration and attention and completing simple tasks, (3) mild limitations in completing complex tasks, and (4) mild to moderate limitations handling normal stresses at work and completing a normal work week without interruption. [A.R. 301]. Thus, based on the foregoing, the ALJ was correct in finding the persistence, intensity and limiting effects of plaintiff's symptoms not credible.

e. The ALJ did not err in failing to obtain vocational expert testimony

Plaintiff contends that the ALJ did not obtain testimony from a vocational expert and has solely relied on the grids, even though plaintiff's impairments of chest pain, shortness of breath, back pain, dizziness and weakness are not adequately addressed by them. In response, defendant asserts that the ALJ properly determined that vocational expert testimony was not needed because plaintiff's impairments were not sufficiently severe.

The ALJ has the burden at step five to show that plaintiff has the ability to perform other work. See Lewis v. Apfel, 236 F.3d 503, 517 (9th Cir. 2001). When a claimant has solely exertional limitations, the ALJ must apply the grids, which will direct a finding of disabled or not disabled. 20 C.F.R. Pt. 404, Subpt. P. App. 2, Rule 200.00(a). The "grids are inapplicable when a claimant's non-exertional limitations are 'sufficiently severe' so as to significantly limit the range or work permitted by the claimant's exertional limitations." See Burkhart v. Bowen, 856 F.2d 1335, 1340 (9th Cir. 1988); Hoopai v. Astrue, 499 F.3d 1071, 1075 (9th Cir. 2007). "A vocational expert is required only when there are significant and 'sufficiently severe' non-exertional limitations not accounted for in the grid." Hoopai, 499 F.3d at 1076.

Here, the ALJ permissibly did not seek the assistance of a vocational expert because plaintiff's non-exertional limitations are not sufficiently severe. "Built into the step-five determination and the grids is recognition that the claimant has met the threshold requirement for a severe disability at step-two." Hoopai, 499 F.3d at 1076. "[T]he severity of the limitations at step five that would require use of a vocational expert must be greater than the severity of impairments determined at step two." Id. Here, plaintiff did not meet the threshold requirement for a severe impairment at step-two. As discussed above, the ALJ properly found that plaintiff does not suffer from severe mental impairments. In making this determination, the ALJ relied on the findings of Dr. Bagner, the lack of findings in the treating source records, and the failure to follow treating source recommendations. Therefore, since plaintiff failed to prove her mental impairments were severe at step-two, her impairments cannot be found "sufficiently severe" so as to require a vocational expert at step-five.

Additionally, the ALJ determined that plaintiff has not "established credibly to her impairments being significant non-exertional limitations," and has not "presented evidence to support that she has functional limitations caused by significant non-exertional limitations." As discussed above, the ALJ properly found plaintiff not credible to the extent that her testimony regarding the persistence, intensity and limiting effects of her symptoms were inconsistent with the residual functional capacity assessment. As such, the ALJ properly determined that plaintiff's non-exertional limitations were not sufficiently severe so as to make the grids inapplicable to her case.

ORDER

For the foregoing reasons, the decision of the Commissioner is affirmed, and the Complaint is dismissed.

DATED: July 6, 2011

_____
STEPHEN J. HILLMAN

13

UNITED STATES MAGISTRATE JUDGE